IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SONION NEDERLAND BV, | |
| Plaintiff, | |
| v. | Civil No. 11-67 (RBK/KMW) |
| ASIUS TECHNOLOGIES LLC, | **OPINION** |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the motion of Asius Technologies LLC ("Defendant") to dismiss or stay the action initiated by Sonion Nederland BV ("Plaintiff"), or, in the alternative, to transfer this contract dispute to the Northern District of Illinois. Because the Court finds that the first action filed in this dispute between Plaintiff and Defendant was brought in the Northern District of Illinois, this case will be transferred there.

I.   BACKGROUND

Plaintiff describes itself as a "global leader in the design of advanced miniature components for advanced acoustics," including "inflatable balloon-like membranes that would engage the surface of the ear canal" and "could be used as part of an overall hearing aid." Pl. Am. Compl. ¶¶ 18-19. Defendant characterizes itself as "a small, start-up company with four members." Def. Br. Mot. to Dismiss at 13. According to Plaintiff, Defendant markets intellectual property on its "ADEL technology," which is related to inflatable, balloon-like membranes for the ear. Pl. Am. Compl. ¶ 20. Plaintiff alleges that, in July and August of 2009, Plaintiff and Defendant discussed potentially integrating Defendant's ADEL technology with

1

Plaintiff's hearing-aid components. Id. at ¶ 21. On August 14, 2009, Plaintiff and Defendant entered into a Joint Development Agreement to "jointly explore" using Defendant's ADEL technology with Plaintiff's components—specifically for use in receiver-in-the-canal (RIC) hearing aids, and potentially other hearing aids. Id. at ¶ 22. Plaintiff points to a great deal of collaboration between Plaintiff and Defendant, alleging that the two companies conducted joint research, "freely pass[ing] research results and data back and forth between Sonion Nederland BV's facility in The Netherlands and Asius' facility in the United States." Pl. Am. Compl. ¶ 23.

Plaintiff alleges that engineers at its facility in The Netherlands developed potentially patentable technology, which Defendant requested to include in "at least one U.S. provisional patent." Id. at ¶ 24. Pursuant to the Agreement, Plaintiff paid Defendant over $100,000.00 between August 2009 and February 2010, which Defendant used for its ongoing joint development expenses. Id. at ¶ 25. However, Plaintiff's and Defendant's attempt to negotiate a license acceptable to both parties failed, and Plaintiff sent a termination letter to Stephen D. Ambrose, president of the Defendant company. Id. at 26.

The Joint Development Agreement ("Agreement") contained several provisions that would apply in the event that the parties terminated the Agreement. See generally Pl. Am. Compl. Plaintiff alleges that the Agreement specified both a cooling-off period of six months, followed by a period of one year within which Plaintiff would have a right of first refusal for any offers made to Defendant by other hearing-aid component suppliers or manufacturers. Pl. Am. Compl. ¶ 28. Plaintiff alleges that the cooling-off period would begin on the date of the termination letter, and therefore would run from March 30, 2010 to September 30, 2010. Id. at ¶ 29.

Nevertheless, Plaintiff claims, within four weeks of the termination letter, Defendant began marketing ADEL technology to a third party. Defendant's presentation to the third party is said to have included "photographs and schematics" of Plaintiff's components, also including data derived from the Agreement. Pl. Am. Compl. ¶¶ 30-32. Plaintiff further alleges that Defendant attended a follow-up meeting with employees of the third party during the cooling-off period. Id. at ¶ 34.

Plaintiff also points out that the Agreement with Defendant included a patent filing disclosure term, which provided that each party must disclose to the other party—at least ten days in advance—the filing of any patent application relating to technology covered by the Agreement. Pl. Am. Compl. ¶ 39. Plaintiff alleges that Defendant did abide by this agreement before filing four provisional patents (61/233,465; 61/242,315; 61/253,843; and 61/297,976) with the United States Patent and Trademark Organization. Id. at ¶¶ 41-44. However, Plaintiff alleges, because "provisional patents do not result in patent rights," Defendant needed to convert the provisional patents to a nonprovisional patent in order "[t]o attain assertable patent rights in the subject matter disclosed in the four provisional patent applications . . . ." Id. at ¶ 47. Accordingly, Plaintiff claims, Defendant subsequently filed a nonprovisional U.S. patent application (12/777,001) and an International Patent Cooperation Treaty Application (PCT/US10/34237). Id. at ¶¶ 49-50. Plaintiff alleges that these two patents include Plaintiff's own inventions, as well as "subject matter that is owned by Sonion Nederland BV pursuant to the Agreement." Id. at ¶ 51. This breach of the disclosure provision of the Agreement, Plaintiff argues, deprives Plaintiff of "ownership of patent rights to which [Plaintiff] is rightfully entitled under the Agreement." Id. at ¶ 55.

Additionally, Plaintiff points to the patent ownership term of the parties' Agreement, which, Plaintiff claims, assigned "all patent rights related to the optimization of audio transducers for the inflation or deflation of membranes" to Plaintiff. Pl. Am. Compl. at ¶ 56. Defendant's nonprovisional U.S. patent application, Plaintiff argues, included claims relating to just such a transducer. Id. at ¶ 57. Although Defendant later dropped those claims from the patent application, Plaintiff argues that Defendant attempted to deprive Plaintiff of its patent rights because the applied-for and cancelled claims of the nonprovisional patent were not made public until the patent application was published four months later, on December 23, 2010. Id. at ¶¶ 58, 59.

Finally, Plaintiff advised Defendant that it intended to file a patent application whose subject would include the subject matter of Defendant's four provisional patents—that is, the technology at issue in the Agreement. Pl. Am. Compl. at ¶ 60. Plaintiff claims that Defendant refused to sign the Declaration and Assignment for Plaintiff's patent application, which are required by the U.S. Patent and Trademark Office. Id. at ¶ 63.

For the foregoing reasons, Plaintiff contends, Defendant materially breached the terms of the Agreement. Defendant, on the other hand, counters that the action is not properly brought in the District of Delaware. Defendant points out that, before Plaintiff filed the Complaint in the instant case, Asius (Defendant in the matter before this Court) had already filed a declaratory judgment action in the Northern District of Illinois, seeking a judgment that it was not infringing Sonion's patent rights. Asius's Complaint was filed in the Northern District of Illinois on December 9, 2010, and the Complaint in the instant action was filed in this Court on January 20, 2011. Def. Br. Mot. to Dismiss 2. Asius's Complaint initially named Sonion U.S., Inc. as

defendant; Asius amended its Complaint in the Illinois action to include Sonion Netherland and Sonion Roskilde A/S on March 25, 2011.[1]  Id.

The declaratory relief sought in the Illinois case ("Asius v. Sonion") also included "an action for tortious interference with prospective economic advantage."  N.D.Ill. Action, Pl. Am. Compl. ¶ 1.  In Asius v. Sonion, Asius alleged that Sonion purports to own U.S. Patent Nos. 7,227,968 ("the '968 Patent") and 7,425,196 ("the '196 Patent"), and that Asius had heard from third parties that Sonion was claiming that Asius infringed the '968 and '196 patents.  Id. at ¶¶ 25, 27, 28, and 30.  Asius's Amended Complaint in Asius v. Sonion makes explicit reference to the Agreement at issue in this case, indicating that "[u]nder a confidentiality agreement, Asius has marketed its Intellectual Property to Sonion," and also specifying that "[i]n February of 2010, Sonion stated that it was not interested in developing a business relationship with Asius."  Id. at ¶¶ 43, 49.  The Asius v. Sonion Amended Complaint also refers to Asius's provisional patent applications, which it describes as directed to its own intellectual property.  Id. at ¶ 46.  The Amended Complaint in Asius v. Sonion does not indicate that any Sonion components or jointly developed technology are included in the provisional patents Asius applied for.

## II.  DISCUSSION

Defendant Asius argues that the instant case is "duplicative" of Asius v. Sonion, the action it filed in the Northern District of Illinois before Plaintiff Sonion filed its Complaint in this Court.  Defendant also argues that the District of Delaware is an improper venue for this action.  Because the Court agrees with Defendant that the first-filed rule applies and that the Northern District of Illinois is a proper venue for this action, the Court will transfer this matter to the Northern District of Illinois, where the first-filed action is being heard.

---

[1] In the Amended Complaint filed in the Northern District of Illinois, Asius explains that Sonion US, Sonion Denmark, and Sonion Nederland BV are "a single homogenized business unit," sharing "a single website, officers, email server, [and] business and intellectual property rights."  See Asius v. Sonion, Am. Compl. ¶¶ 6-24.

**A. First-filed Rule**

Under the first-filed rule, "'[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" EEOC v. Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) (quoting Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)). The rule is intended to encourage "sound judicial administration" and to promote "comity among federal courts of equal rank." Id. The first-filed rule gives a court power to "enjoin" proceedings involving the same parties and the same issues before another district court. Id. at 971-72 (citing Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Corp., 125 F.2d 1008, 1009 (3d Cir. 1942)). Once a court determines that the first-filed rule applies, it has the option to either dismiss, stay, or transfer the action pursuant to 28 U.S.C. § 1404(a). Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., 416 F. Supp. 2d 1048, 1052-53 (E.D. Pa. 2006); Allianz Life Ins. Co. of N. Am. v. Estate of Bleich, No. 08-0668, 2008 U.S. Dist. LEXIS 90720, 2008 WL 4852683, at *3 (D.N.J. Nov. 6, 2008) (citing Keating Fibre). However, the first-filed rule is not absolute. EEOC, 850 F.2d at 972. The rule is grounded in equitable principles and thus does not apply where, for example, there is evidence of 1) bad faith or 2) forum shopping, or where 3) the second-filed action is further developed than the first, or 4) the first-filing party commenced suit in anticipation of the second party's imminent filing in a less favorable forum. Id. at 976-77. Plaintiff has not argued that these factors are present in this case. In fact, it is the Defendant who argues that Plaintiff "has engaged in gamesman ship and forum-shopping," by "filing suit in this Court under the guise of a contract dispute that arises out of the same facts." Def. Br. in Support of Mot. to Dismiss, 8.

Not contending that the first-filed rule is inapplicable because Defendant has violated the equitable principles upon which its motion relies, Plaintiff argues that "well established Third

Circuit case law" points in favor of this Court's declining to observe the first-filed rule, Pl. Br. in Opposition, 7, because the rule applies only where the actions are "truly duplicative," such that "a determination in one action leaves little or nothing to be determined in the other." Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322, 334 n.6 (3d Cir. 2007) (internal citations omitted). However, it is evident that these principles substantiate a court's decision to decline to follow the first-filed rule in a particular case. That is, they are the exception to the rule, and not the rule itself. Despite the existence of discretionary exceptions to this equitable doctrine, the rule enunciated by the Third Circuit is that trial judges should "exercise their discretion by enjoining the subsequent prosecution of similar cases in different federal district courts." EEOC v. Univ. of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988) (emphasis added).

Moreover, in many cases where courts have used their discretion to decline to follow the first-filed rule, it is because the parties in the first- and later-filed actions were different. See, e.g., Grider, 500 F.3d at 334 n.6 (finding that the purportedly first-filed actions "were filed by plaintiffs who have no involvement whatsoever with the [instant] case"); Martin v. Citizens Fin. Group, Inc., No. 10-260, 2010 U.S. Dist. LEXIS 83474 at *7 (E.D. Pa. Aug. 13, 2010) (noting that the plaintiffs and defendants in the two actions were different). That is not the case here. Sonion and Asius are the parties in the action brought in the Northern District of Illinois, and they are parties in this case as well. Moreover, despite the fact that Asius v. Sonion is framed as a patent infringement action while the instant matter is framed as a breach of contract issue, it is clear that the focus of each case is the intellectual property rights related to their Joint Development Agreement. In Asius v. Sonion, Asius claims that it has marketed its technology to third parties. Asius v. Sonion, Pl. Am. Compl. ¶ 50. It further claims that Sonion has stated to those third parties that, by claiming the rights to that technology as its own, Asius infringes

7

Sonion's patent rights. Id. at ¶¶ 51, 53. In the instant case, Sonion's Amended Complaint explains that the technology Asius has been marketing to third parties may include Sonion's components, which Sonion claims it owns the rights to. Pl Compl. at ¶¶ 23, 27. Therefore, the decision rendered in this Court would determine the outcome in the Northern District of Illinois, and the opposite is true as well. As set forth above, this is precisely the result that the first-filed rule is intended to avoid.

### B. Venue

Having concluded that the first-filed rule applies, it is incumbent upon the Court to decide whether this action should be dismissed, stayed, or transferred pursuant to 28 U.S.C. § 1404(a). Keating Fibre, 416 F. Supp. 2d at 1052-53. Specifically, as courts within this Circuit and elsewhere have found, "if the first-filed action is vulnerable to dismissal on jurisdictional grounds, the court in the second-filed action should stay or transfer said action rather than dismiss it outright." Nature's Benefit, Inc. v. NFI, 2007 U.S. Dist. LEXIS 62871 (D.N.J. Aug. 27, 2007) (citing Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991); GT Plus, Ltd. v. Ja-Ru Inc., 41 F.Supp. 2d 421, 424 (S.D.N.Y. 1998); 17 Moore's Federal Practice, § 111.13(1)(o)(ii)(A)-(C)).

In this case, Plaintiff does argue that the first-filed action is on shaky jurisdictional ground. Plaintiff explains that, because Asius initially named the incorrect Sonion entity in the Northern District of Illinois action, Asius lacked standing and could not cure that deficiency by amending its complaint. Pl. Br. in Opposition, 6 (citing Innovative Therapies, Inc. v. Kinetic Concepts, Inc., 599 F.3d 1377 (Fed. Cir. 2010). Plaintiff also points out that, although Asius's action in the Northern District of Illinois seeks declaratory judgment that Asius does not infringe Sonion's patent, Asius's Complaint "failed to identify a specific product for the Northern District

of Illinois to declare non-infringing." Id. at 5. Accordingly, Plaintiff maintains, the Asius v. Sonion Court lacks the "'substantial controversy' of sufficient immediacy and reality required by the Supreme Court in MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)." Id. These jurisdictional questions weigh against dismissing this second-filed case outright.

Because neither party addresses Defendant's motion that the instant action be stayed, we do not address it, and turn to Defendant's request that the case should be transferred to the Northern District of Illinois. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Accordingly, a court must first determine that a case could have originally been brought in the venue to which transfer is sought.

In this case, Plaintiff could originally have filed the action in the Northern District of Illinois. Pursuant to 18 U.S.C. § 1391(a), where a court's jurisdiction is "founded only on diversity of citizenship," the case may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State. . . ." A corporation resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 18 U.S.C. § 1391(c). Here, Asius is the only defendant. Moreover, the Northern District of Illinois has personal jurisdiction over Asius, because one of Asius's two offices is in Schaumburg, Illinois. Def. Br. in Opposition, Ex. B, Affidavit of Robert Shulein at ¶ 3.

Having moved passed the threshold inquiry of Section 1404(a), the Court must weigh the interests at stake in Defendant's motion for transfer of venue. Courts may consider both private and public interests in considering motions for change of venue.[2] Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Private interests may include the following:

---

[2] Public interests may include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court

9

plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum) . . . .

Id. (internal citations omitted). Here, as Defendant points out, the only factor in favor of the District of Delaware is the fact that Plaintiff chose it. Clearly, Defendant's preferred forum is the Northern District of Illinois (where Defendant filed the first-filed case). Moreover, Plaintiff is a large multinational corporation, whereas Defendant is a corporation consisting of only four members. Def. Br. Mot. to Dismiss at 13. Furthermore, Defendant explains that "key witnesses and documents of Asius" are located in the Northern District of Illinois, and that "trial counsel for all of the parties" are located there as well. Def. Br. in Opposition, 12. Finally, Defendant avers that it has no bank accounts in Delaware, does not file tax returns in Delaware, and does not have an "ongoing presence of any kind" in this forum. Def. Br. in Opposition, Ex. B, Affidavit of Robert Shulein at ¶¶ 21, 26, 27. Moreover, Defendant avers that it would "severely impact" Asius's operations to litigate in Delaware. Id. at ¶ 34. Plaintiff, on the other hand, which resides in The Netherlands, offers no meaningful reason as to why Delaware would be a more convenient forum than Illinois.

Therefore, because the first-filed action may be subject to dismissal on jurisdictional grounds, and because the Northern District of Illinois is a proper and more convenient venue

---

congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d 873, 879-80 (3d Cir. 1995) (internal citations omitted). The Court notes that only the second interest appears to be relevant, and that interest overlaps with the pragmatic concerns that constitute private interests as well.

than the District of Delaware, the Court finds that this second-filed action should be transferred to the venue where this controversy was first filed.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, stay, or transfer is hereby **GRANTED**, and this civil action is transferred to the Northern District of Illinois. An accompanying Order shall issue today.

Dated: 11/18/2011                                          /s/ Robert B. Kugler
                                                           ROBERT B. KUGLER
                                                           United States District Judge